IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>**GIOVANNI MARIN IRIZARRY**<br>**WALESKA OLIVO SANTIAGO**<br><br>**Debtor(s)** | Case No.: 19-04547-BKT<br><br>Chapter 13 |

**TRUSTEE'S OBJECTION TO EXEMPTIONS**

**TO THE HONORABLE COURT:**

   **COMES NOW** Alejandro Oliveras Rivera, Chapter 13 Trustee, through the undersigned attorney, and very respectfully states, alleges and prays as follows:

   1.   Pursuant to Federal Bankruptcy Rule 4003(b), the trustee is hereto objecting to debtor(s) claim for exemptions as set forth below.

   2.   The meeting of creditors concluded on September 11, 2019.

   3.   The captioned Debtor(s) listed in Schedule A/B and C the following property: "*Potential Claim(s) for violation of RESPA, TILA, FDCPA, FCRA EFTA, TPCA, and other consumer protection loans*", with value of one dollar ($1.00). In Schedule "C", the captioned Debtor(s) claimed exemption pursuant to **§522(d) (5)** in the amount of $0.50 cents. Joint debtor filed a separate Schedule "C", where she included the same property and claimed exemption of .50 cents,

TRUSTEE'S OBJECTION TO EXEMPTION(S)
Page 2 of 8
Case No.19-04547-BKT

pursuant to Section 522(d)(5). Trustee is herein objecting the .50cents claimed as exemption by each debtor and requests that those exemptions be denied in their entirety on the following two (2) grounds: (a) The description of the potential claim(s) lacks sufficient information in order to determine the nature of the claim(s), debtors' interest in the potential claim(s) and the value of the potential claim(s) and (b) By each debtor claiming .50 exemption, results in claiming the total value of the property, thus, the exemptions can be construed as one "in kind", which can be interpreted as debtor(s) intention to claim the entire claim, instead of their interest up to the amount that they would be entitled pursuant to Section 522(d)(5). Appearing below is a discussion on both arguments.

4. The information to be furnished in the schedules, particularly when an exemption is being claimed is crucial. This can be gathered from the Opinion of the First Circuit of In Re Barroso-Herrans, 524 F.3d. 341 (1st Cir. 2008). The Court reasoned: "*When an individual files for bankruptcy, all of his property…becomes property of the estate. 11 U.S.C. § 541. But the debtor is entitled to claim as exempt, and so retain, some assets. 11 U.S.C. § 522(d). The statute enumerates both what kind of assets may be exempted, e.g. an "interest . . . in one motor vehicle," id. § 522(d)(2), and the maximum value of those exemptions, e.g.*

*"not to exceed $2,400 in value, id."* In Re Barroso-Herrans, 524 F.3d. 341 (1st Cir. 2008). ***"The threshold question of what has been claimed [exempt] calls for interpreting the schedules filed by the debtors."*** Id. (Our emphasis). In the instant case, the information provided by debtor(s) is highly insufficient to interpret what is the potential claim about; what is debtor's interest in such claim(s) and what is the value of the claim(s).

5. In Barroso-Herrans, supra, the debtor had included as part of his properties two (2) account receivables with an amount owed for each one and two (2) lawsuits that were related to the above mentioned receivables. Debtor claimed only $4,000 on each lawsuit. Chapter 7 Standing Trustee settled the lawsuits for a substantially higher amount than the $8,000 and argued debtor was only entitled to the $8,000. Debtor opposed, arguing his intention was to exempt all the proceeds. The bankruptcy court approved the settlement and agreed with trustee's position as to the amount debtor was entitled as exemption.

6. The Court of Appeals in Barroso-Herrans, supra, found that schedule C was found to be ambiguous with respect to debtor's contention that he was entitled, not only to the $8,000, but to the entire proceeds. In this respect, the Appeals Court reasoned at page 345 as follows: *"[I]n legal documents, ambiguity is traditionally construed against the drafter, and that canon has*

*special force in this context: after Taylor, a failure to object to a claimed exemption has very harsh consequences for the estate, and so **it is most fair to place on the debtor the burden of claiming exemptions unambiguously***". Applying to the instant case the reasoning of the First Circuit in Barroso-Herrans, supra, as to the burden debtor(s) have to claim exemptions unambiguously, debtor(s) description of his alleged interest in potential claims is highly ambiguous and thus, the exemption should be denied.

7. In the case of Schwab v. Reilly, 130 S. Ct. 2652 (2010), the Supreme Court discussed the importance of balancing the debtor's allowance of exemptions and its impact upon the distribution to creditors:

> As we emphasized in *Rousey*, "[t]o help the debtor obtain a fresh start, the Bankruptcy Code permits him to *withdraw from the estate* certain *interests in* property, such as his car or home, *up to certain values*." 544 U.S., at 325, 125 S.Ct. 1561 (emphasis added). **The Code limits exemptions in this fashion because every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to his creditors.** See § 522(b)(1). Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors (…)"

(Emphasis ours).

8. The Supreme Court decision in Reilly is based upon the premise that the debtor's "*schedules of exempt property **accurately describes the asset** and declares the 'value of [the] claim*

*exemption' in that asset to be an amount within the limits that the Code prescribes*". (Emphasis ours).

9. Yet another argument for requesting that the exemption be denied is that, by claiming an exemption that comes up to the same value of the property can be construed as one "**in kind**", with the intention to claim the entire value of the property exempt, while Section 522(d)(5) establishes an exemption with a limited dollar amount. Expanding on trustee's ground for objection as to the "in kind" exemption claimed, it is pointed out that through the exemptions claimed, it is evident that debtors intend to <u>claim as exempt the entire value of the properties</u> mentioned in the above paragraph six (6). This scenario is similar to the example given by Sommers Gretchko in her article **Watch Out for the Putative "In-Kind" Exemption!** [1],:

> The debtor owned interests in three privately held entities, and his Schedule C of "property claimed as exempt" alleged that the "market value" of his interest in each business was $1,000. That *same* Schedule C also listed the "value of the exemption" for the interest in each business at $1,000. Most of the other creditors thought that the debtor was just trying to exempt $1,000 of his interest in each business entity— and they weren't troubled by such small exemptions. However, a handful of creditors were concerned that the debtor's recitation of an *identical* market value and exemption value of his interests in these businesses meant that the debtor was really trying to exempt the *entire* value of the his stock in *each* of the businesses".

---

[1] XXVII, ABI Journal 4, 8 May 2008.

10. Ms. Sommers Gretchko lectures that:

*A term of art defines this maneuver: It is called the "in-kind exemption," because the debtor is trying to assert an exemption of an entire asset (not just the exemptible portion thereof). Despite the monetary limits in Bankruptcy Code §522(d), and in many state exemption schemes, debtors who purport to assert an in-kind exemption are attempting to effectively "pull a fast one" by trying to exempt assets in their entirety, while disregarding the statutory dollar limits for the exemption.*

11. The author then speaks of "red flags". *"Creditors must watch for any sign that the debtor is trying to claim an in-kind exemption. The most obvious "red flags" are if debtor's Schedule C (1) lists the market value and the exempt value at identical figures or (2) lists the market value of the asset as "$1.00," "unknown" or "contingent" and the claimed exemption as "100 percent," "contingent," unknown," etc. "*

12. The case of Barroso-Herrans, supra, also discusses this topic: *"Use of terms like '100% [of the property's value],' 'unknown,' 'to be determined,' 'tba' and '$1.00' are red flags to trustees and creditors,"* 1 Collier on Bankruptcy *P. 8.06(1)(c)(ii) (15th ed. rev. 2007), and therefore put them on notice that if they do not object, the whole value of the asset--whatever it might later turn out to be--will be exempt."*

13. As Chapter 13 Trustee, we too *"… must watch for any sign that the debtor is trying to claim an in-kind exemption."*

14. Debtor(s) is/are not member(s) of the U.S. Armed Forces, the Coast Guard, the Public Health Service or the National Oceanic and Atmospheric Administration, as evidenced by the Certificate issued by the U.S. Department of Defense, copy of which is attached only to the original of this motion and movant's copy.

**WHEREFORE** it is very respectfully requested from this Honorable Court to grant this objection and consequently, <u>deny</u> debtor and joint debtor's claim of exemption in the amount of .50 cents each pursuant to Section 522(d)(5) over their alleged interest in "*Potential Claim(s) for violation of RESPA, TILA, FDCPA, FCRA EFTA, TPCA.*

**NOTICE:** Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date I electronically filed the above document with the Clerk of

the Court using the CM/ECF System which sends a notification of such filing to all parties in this case registered for receipt of notice by electronic mail. I further certify that the foregoing document has been served to the U.S. Trustee at ustregion21.hr.ecf@usdoj.gov and by depositing true and correct copies thereof in the United States Mail, postage prepaid, to debtor(s) at the address of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 9th day of October 2019.

**ALEJANDRO OLIVERAS RIVERA**
**CHAPTER 13 TRUSTEE**
P.O. Box 9024062
San Juan, PR 00902-4062
Tel. 977-3500  Fax 977-3521
aorecf@ch13sju.com

**By: /s/ MIRIAM SALWEN ACOSTA**
MIRIAM SALWEN ACOSTA
Staff Attorney
USDC # 208910

Department of Defense Manpower Data Center

Results as of : Oct-08-2019 04:39:18 PM

SCRA 5.1



# Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-0979 |
| Birth Date: | |
| Last Name: | MARIN IRIZARRY |
| First Name: | GIOVANNI |
| Middle Name: | |
| Status As Of: | Oct-08-2019 |
| Certificate ID: | C8Z9YG5T1232N5P |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Oct-08-2019 04:39:58 PM

SCRA 5.1



# Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:             XXX-XX-3849
Birth Date:
Last Name:       OLIVO SANTIAGO
First Name:      WALESKA
Middle Name:
Status As Of:    Oct-08-2019
Certificate ID:  8CKQZ40V3S4D5ZM

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940).  DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate.  In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33.  If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you.  See 50 USC App. ? 521(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.